UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 08-194 (RJL) |
| | : | |
| v. | : | |
| | : | VIOLATION: |
| DAMARIS HERRERA, | : | 18 U.S.C. §§ 1028(a)(1), (b)(1)(A)(ii) |
| Defendant. | : | (Produce Identification Document Without Lawful Authority); 22 D.C. Code §§ 3221(b), 3222(b)(2) (Fraud in Second Degree). |

**FILED**

AUG 1 8 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

### STATEMENT OF OFFENSE

Pursuant to Federal Rule of Criminal Procedure 11, defendant **DAMARIS HERRERA** ("HERRERA") and the United States agree and stipulate as follows:

1. Foreign nationals are eligible to obtain District of Columbia driver's licenses if they have proof that they are legally present in the U.S. and can continue to stay in the U.S. for at least another six months. A foreign national must also present proof of his name, date of birth, social security number, and District of Columbia residency. The District of Columbia Department of Motor Vehicles ("DMV") has specifically limited the types of documentation it will accept. For example, original birth certificates, unexpired passports, or resident alien cards can prove an individual's identity (i.e., name and date of birth). In addition to tendering the required documentation, a foreign national must complete and sign a driver's license application, certifying that the information contained therein is correct and accurate. The DMV employee processing the application is required to identify on the application the type of documentation that was presented by the applicant.

2. Applicants for driver's licenses must pass the following three tests: vision screening,

1

knowledge and street sign recognition, and skills road. Applicants who possess a valid driver's license from another state, however, are only required to pass the vision screening test. Applicants who possess a valid driver's license from a foreign jurisdiction need not take the road test, but must pass the vision screening and knowledge and street sign recognition tests.

3. Defendant **HERRERA** and Salvador Diaz have two children together. Since December 2004, defendant **HERRERA** and Diaz have resided in a house that they purchased in Silver Spring, Maryland.

4. Diaz told defendant **HERRERA** that he knew a female DMV employee who was selling D.C. driver's licenses. On September 26, 2006, defendant **HERRERA** went to the Brentwood DMV branch with the intention of purchasing a fraudulent D.C. driver's license, an item of value that authorizes an individual to drive and serves as a photographic identification card. Based upon Diaz's physical description of the DMV employee, defendant **HERRERA** approached Patricia Gonzalez. Defendant **HERRERA** told Gonzales that she was Salvador's wife. Then, defendant **HERRERA** gave Gonzalez her Social Security card, Maryland identification card and her father's D.C. address. Even though defendant **HERRERA** did not complete any applications, provide any verification of D.C. residency, or take any examinations, including those for vision, knowledge and road skills, Gonzalez issued a D.C. driver's license in defendant **HERRERA**'s. Defendant **HERRERA** put $500 inside a piece of paper and handed it to Gonzalez.

_____
**DAMARIS HERRERA**, Defendant